IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                  Plaintiff,

        -v-                               13-CV

THE SUM OF $818,604.26 WHICH REPRESENTS
ALL MONETARY WIRE TRANSFERS
ORIGINATING FROM VERWALTUNGS UND
PRIVAT-BANK AG SENT BY OR ON BEHALF OF
VALOBENA AG, THROUGH JP MORGAN CHASE BANK
("JP MORGAN CHASE"), 1 CHASE PLAZA, NEW YORK, NY,

                  Defendant.

_____

## VERIFIED COMPLAINT FOR FORFEITURE

    The United States of America, by its attorney, William J. Hochul, Jr., United States Attorney for the Western District of New York, Richard D. Kaufman, Assistant United States Attorney, of counsel, for its verified complaint herein allege the following:

    1.    This is an action in rem for the forfeiture of $818,604.26 United States currency which represents all monetary wire transfers originating from VERWALTUNGS UND PRIVAT-BANK AG (hereinafter referred to as "VERWALTUNGS") sent by or on behalf of VALOBENA AG (hereinafter referred to as "VALOBENA"), through JP MORGAN CHASE BANK ("JP MORGAN CHASE"), 1 Chase Plaza, New York, New York, 10005, under the provisions of Title 18, United States Code, Section 981(a)(1)(A) and (C) for violations of Title 18, United States Code, Sections 1084, and 1956 and 1960.

2.      The jurisdiction of this Court is invoked pursuant to Title 28, United States Code, Sections 1345, 1355(b)(1)(A) and (B)  and Title 18, United States Code, Section 981(a)(1)(A) and (C).  Venue is properly premised in the Western District of New York pursuant to Title 28, United States Code, Sections 1395(a) and (b).


3.      The subject matter of this action is $818,604.26 United States currency (hereinafter the "defendant property")  that represents all monetary wire transfers originating from VERWALTUNGS sent by or on behalf of VALOBENA, through JP MORGAN CHASE and is currently in the custody of the federal government.


## BACKGROUND INFORMATION


4.      In recent years, the online gambling industry – which has become a multi-billion dollar business – has led to the development of virtual casinos.  These websites, or online "casinos", are located on servers all over the world, typically outside of the United States.  Like the websites, online gamblers are also located throughout the world, and, with access to the internet, are able to fund their online gambling accounts.  Once their accounts are funded, gamblers are then able to gamble online.


5.       Individuals seeking to gamble over the internet must create and fund accounts with the online casinos.  These accounts must be funded prior to engaging in online gambling.  There are various methods for funding these accounts, including the use of credit or debit cards, bank wire transfers, Western Union, or Money Gram transfers.  In

an effort to conceal the source and purpose of the funds, the online casinos have established an elaborate network of "shell" companies which are not directly associated with them. These "shell" companies, which are also located throughout the world, are then used by the online gamblers to fund their accounts, and are used by the individuals operating online casinos to remit payments to online gamblers.

6.      After an online gambler funds his or her account, the credit will be posted online, and the gambler can begin to place wagers.  The online gambler can also withdraw funds or "cash out" from their account at any time.  When this occurs, the online casinos will make payments to the gambler in the form of a check, ACH debit, or more commonly, in the form of a wire transfer through one of the network of established "shell" companies. An investigation conducted by the United States Secret Service (hereinafter referred to as "USSS") has revealed that VALOBENA, is one of many shell companies used to remit "cash out" payments or winnings to gamblers.  Such shell companies are typically used for relatively short periods of time (weeks or months), after which other shell companies are set up and used to make the payments, all in an effort to mask their true nature as well as to avoid detection and seizure of funds by law enforcement.

7.      In this case, VALOBENA utilizes wire transfers to distribute sports gambling winnings to online gamblers and affiliates in the United States and the Western District of New York.  VALOBENA acts as a third-party money processor by wiring illegal gambling proceeds received from online casinos and gaming websites to gamblers' personal banking accounts through affiliates located in United States banks.

## PAYMENTS FROM VALOBENA TO GAMBLERS IN THE
## WESTERN DISTRICT OF NEW YORK

8.     During the course of the investigation, USSS agents discovered that VALOBENA remitted payments to gamblers who live both inside and outside of the Western District of New York.   Each of the individuals interviewed advised that the payment he received from VALOBENA was a "cash out" (winning) payment from online gambling.

9.     From May 31 to July 1 2013, Gambler 1 of Broadway St, Lancaster, NY, received two (2) wires from suspected shell companies related to illegal online gambling, for a total of $924.18.   The suspected shell companies are listed on financial records as BOTRADE FINANCIAL SERVICES, and VALOBENA AG.   It should be noted that BOTRADE FINANCIAL SERVICES is the subject of another investigation by the United States Secret Service, Seattle Field Office.   On July 9, 2013, a United States Secret Service agent (hereinafter "USSS agent") confirmed that the wires received by Gambler 1 were sent to an account he maintains at STATE EMPLOYEE FEDERAL CREDIT UNION (SEFCU), located at 598 Main St, Buffalo, NY, where he maintains a checking account ***73-S9.   It was confirmed that Gambler 1 had gambled online with a company called "Betonline.ag" which was based in Panama.   Gambler 1 stated that he only used Betonline.ag to place his bets.   It was confirmed that Gambler 1 stated that any and all wires that he received into his SEFCU checking account were "cash out" payments represented winnings from online sports gambling.   Documentation from SEFCU revealed that Gambler 1 received a wire transfer on July 1 2013, for $461.51 into his SEFCU

4

account, Buffalo, New York from VALOBENA.  It was at that time, after Gambler 1 received a wire from VALOBENA, that the USSS began to focus on VALOBENA as a potential third party payment processor for online gambling companies.

10.     Through an open resource search at "*www.google.com*," the USSS was able to identify the websites "*www.betonline.ag*" which is the web addresses for BETONLINE, a virtual online casino that specializes in online sports betting. According to their website, **"www.betonline.ag"** advertises that a gambler can place a bet online and that they are an online gaming firm that is located in Panama.  The website features sports betting, casino games and horse race betting, with a concentration on all aspects of sports betting, to include the National Football League, the Major League Baseball and the National Basketball Association.  Gambling websites, like **"www.betonline.ag"** employ third party processors to remit proceeds of online gambling to gamblers located throughout the world, including payments to gamblers in the United States.   When remitting payments to gamblers in the United States, the third party processors aid the gambling websites by disguising the true nature of the payments due to their illegality when sent into this country.

11.     On September 10, 2013, a USSS agent telephonically interviewed Gambler 2, who lives on Michael Anthony Lane, Depew, NY.  Gambler 2 stated that he had been online gambling and betting for several years. Gambler 2 stated that he utilized the websites **"www.betonline.ag"** for online betting and gambling.  Gambler 2 acknowledged

that he received a wire transfer payment on June 3, 2013 for $7,531.68, into his RBC Citizens Bank account in Buffalo, New York, from VALOBENA.   Gambler 2 acknowledged that the wire transfer payment was the proceeds of a winning bet from an online sports wager. It should be noted that Gambler 2 was interviewed by a USS agent as part of an earlier investigation of 1\PPP BERATUNG AG, here in after "PPP BERATUNG AG", a third party payment processor for illegal online gambling that was the subject of a successful seizure warrant by the US Secret Service, Buffalo Field Office (see 12-CV-01070-WMS).

## OTHER GAMBLERS RECEIVING PAYMENTS FROM VALOBENA AG

12.     On Sept 10, 2013, a USSS agent telephonically interviewed Gambler 3, an individual who lives in Utica, NY. Gambler 3 stated that he had been online gambling and betting for several years.   Gambler 3 stated that he utilized the website **"www.hollywoodsportsbook.eu"** and "**www.betonline.ag**" for online betting and gambling.   Gambler 3 acknowledged that he received a wire transfer payment on May 16, 2013, for $999.98 into his First Niagara Bank account, in Buffalo, New York, from VALOBENA AG. Gambler 3 stated that the wire transfer payment was the proceeds from online sports gambling.

13.     On July 10, 2013,  a USSS agent telephonically interviewed Gambler 4, an individual who lives in Henderson, NV. Gambler 4 stated that he had been online

gambling and betting for several years.  Gambler 4 stated that he utilized the website "*www.betonline.ag*" for online betting and gambling.  Gambler 4 acknowledged that he received up to ten (10) wire transfer payment from February to June 2013, for $50,721 into his Bank of Hawaii checking account, from VALOBENA and BOTRADE FINCANCIAL SERVICES. Gambler 4 acknowledged that the wire transfer payments were the proceeds from online sports gambling.

14.     After conducting a financial investigation of VALOBENA in relation to the amount of wires sent to customers located in the United States, the above listed "Gambler 1," and "Gambler 2" were the only gamblers identified that lived in the Western District of New York. Through the experience of the USSS and through the shared experience of other USSS agents who have investigated cases similar to this, the USSS learned that companies such as VALOBENA purposefully and carefully disseminate the "cash out" payments, being careful not to remit a large number of payments to the same geographic area of the United States.  While the reasons for doing so are not fully understood at the moment, a potential reason for engaging in this practice is to increase the difficulty for law enforcement to establish judicial venue.

## HISTORICAL INFORMATION ON VALOBENA AG

15.     The review of financial documentation and other research conducted by the USSS  yields probable cause to support the conclusion that VALOBENA is involved only

in the payment of illegal online sports gambling proceeds and is not involved in any other form of legitimate business.

16.    The USSS has conducted extensive research on VALOBENA which has shown that the company has no characteristics typically associated with a legitimate business. Through an open-resource search at "www.google.com," a USSS agent was unable to identify any website for VALOBENA, although they have a physical address of STEINWIESEENSTRASSE 1, 8952, SCHLIEREN, SWITZERLAND. It is noteworthy that this exact address, STEINWIESEENSTRASSE 1, 8952, SCHLIEREN, SWITZERLAND, was the address of a previous shell company named "PPP BERATUNG AG". The USSS agent investigated "PPP BERATUNG AG" for the same alleged offense that VALOBENA AG is accused. Resulting in a seizure warrant that caused "PPP BERATUNG AG" to cease sending illegal online gambling payments into the United States. As "PPP BERATUNG AG" occupied the same physical address as "VALOBENA AG", and as "VALOBENA AG" is servicing the same customers as "PPP BERATUNG AG" it is likely that the companies are connected by owner or management, and that "PPP BERATUNG AG" simply changed its name to "VALOBENA AG" to continue to process illegal online gambling payments into the United States without detection by law enforcement.

17.    According to financial and numerous other law enforcement sources, the nation of Switzerland and Liechtenstein are considered a high-risk jurisdiction for off-shore activities relative to money laundering, tax evasion, and gaming. Switzerland is where

VALOBENA AG physically resides and Liechtenstein is where VALOBENA AG conducts its banking.  According to all investigative efforts, VALOBENA AG is not a registered commercial business.  Most legitimate businesses have websites listing significant amounts of information regarding their operations, especially businesses conducting the volume of financial transactions at the level that VALOBENA AG operates.  An internet search, however, revealed very few Google search "hits" and could not identify a website for "VALOBENA AG".

18.    A USSS agent also queried the Dun & Bradstreet website (www.dnb.com) and database and could only locate a company identified as "VALOBENA AG" at the address of STEINWIESEENSTRASSE 1, 8952, SCHLIEREN, SWITZERLAND. No additional information could be found about the company.  Dun and Bradstreet is a Fortune 500 public company that licenses information on businesses and corporations. According to Dun and Bradstreet, they are the world's leading source of commercial information and insight on businesses throughout the world, and their global commercial database contains more than 195 million business records.

19.    A USSS agent also had a search conducted by using Lexis-Nexis which is a leading global provider of information, and provides customers with access to billions of searchable documents and records from more than 45,000 legal, news and business sources.  This search did not return any results for "VALOBENA AG".

**FINANCIAL INVESTIGATION REGARDING VALOBENA**

20.     The international transfer of money can be a complicated process, and often involves multiple steps between the initiation of the transfer in one country and the actual receipt of funds by an individual located in another country.  When a foreign bank sends an electronic payment to the United States on behalf of their account holder, the foreign bank enlists the services of a United States bank with whom the foreign bank maintains a "correspondent account."   The United States bank is generally referred to as a "correspondent bank."   These correspondent accounts exist primarily to facilitate the conversion of foreign currency between banks.

21.     The wire transfer generally involves a two-step process, which steps are often, but not always, a day apart.  First, the foreign bank sends a message (called a MT202 (cover)) to let the bank receiving or intermediary bank know that funds are coming. This includes beneficiary information.  Second, the foreign bank sends a message (called a MT103 (payment)) with the actual funds. In making an international transfer of funds, the foreign bank transmits funds to the correspondent bank account in the United States, where the funds are converted from the foreign currency to United States dollars. At this point, the money now resides within the United States banking system.  The funds are then forwarded to the recipient United States bank accounts via the Federal Reserve Wire Transfer system or the CHIPS wire transfer system.  The correspondent bank account, therefore, does not hold any actual funds; rather the funds are quickly, almost instantaneously, converted to United States dollars and then forwarded to their final

destination in the United States.

22.     The following financial summary was conducted by a USSS agent for all wires sent by VERWALTUNGS on behalf of VALOBENA through JP MORGAN CHASE.

23.     In the current investigation, VALOBENA is acting as a money processor on behalf of sports gambling websites, specifically *www.betonline.ag*.   To this end, VERWALTUNGS, of Triesen, Liechtenstein, sends wires on behalf of VALOBENA AG to JP MORGAN CHASE using VERWALTUNGS correspondent bank account at JP MORGAN CHASE for re-distribution into the bank accounts of United States-based online gamblers.  The correspondent bank account at JP MORGAN CHASE is not used to store the incoming wire transfers, but is simply used to process the incoming wires by instantaneously re-transmitting them to the gamblers' bank accounts throughout the United States banking system.

24.     A review of financial documents from JP MORGAN CHASE covering the date range of January 8, 2013, through July 10, 2013, identified 869 wire transactions sent by VERWALTUNGS on behalf of VALOBENA (incoming wires) totaling $1,731,101.41. Additionally, during this time period, five different entities (BOTRADE FINANCIAL SERICES, INATEC PAYMENTS, PENVY, AMADEUS CONSULTING AG, and ZETEC GROUP AG) sent through JP MORGAN CHASE 31 wires that were intended for and received by VALOBENA that totaled $1,948,027. The incoming wires originating

from VALOBENA were remitted to hundreds of different beneficiaries; including individuals located in the United States, including the Western District of New York. VERWALTUNGS uses JP MORGAN CHASE because of JP MORGAN CHASE's relationship to other, often smaller, domestic banks. From USSS agent training and experience, this pattern of money transfers is typical of a third party processor who is remitting money on behalf of other entities.

25.    Financial documents confirm that VALOBENA utilizes an account at VERWALTUNGS, located in Triesen, Liechtenstein.    Furthermore, interviews of gamblers located in the United States confirmed that the wires constitute illegal online sports gambling payouts sent by VERWALTUNGS on behalf of VALOBENA through JP MORGAN CHASE.

26.    The foreign bank, VERWALTUNGS, maintains a "correspondent banking relationship" with the correspondent bank of JP MORGAN CHASE.  VERWALTUNGS uses such correspondent banking relationships to send funds to the correspondent banks on behalf of any of VERWALTUNGS' customers worldwide.    Thus, VERWALTUNGS' correspondent banking relationships are not "customer specific." When sending wire transfers on behalf of VALOBENA and any of VERWALTUNGS other banking customers, VERWALTUNGS uses the same correspondent banking relationship account number with the respective correspondent bank, in this case, JP MORGAN CHASE.  For example, on a given day, VERWALTUNGS may send wires to JP MORGAN CHASE on behalf of VALOBENA as well as other corporate or individual customers, but would use

the same correspondent banking relationship account for all such transfers to JP MORGAN CHASE.  It is for this reason that in this case, as in the other previous such seizures, when determining which of multiple wires to seize pursuant to a seizure warrant, the United States correspondent banks use the "OFAC" filter discussed below to identify only those funds which VERWALTUNGS sends "by or on behalf of" VALOBENA[1].

## APPLICABLE LAW

27.     On July 18, 2011, FinCEN issued ruling titled, "Definitions and Other Regulations Relating to Money Services Businesses (MSB)", which clarified that certain foreign-located persons engaging in MSB activities within the United States fall within FinCEN's definition of a MSB, and therefore, must comply with FinCEN requirements. Consistent with this rule, certain foreign-located persons engaging in MSB activities within the United States are required to register with FinCEN.  The compliance date for this rule was January 23, 2012.

28.     As of January 23, 2012, MSB's located outside of the United States, but

---

[1]   OFAC stands for the Office of Foreign Assets Control, of the U.S. Department of the Treasury, which administers and enforces economic and trade sanctions based on U.S. foreign policy and national security goals against targeted foreign countries and regimes, terrorists, international narcotics traffickers, those engaged in activities related to the proliferation of weapons of mass destruction, and other threats to the national security, foreign policy, or economy of the United States.  OFAC acts under Presidential national emergency powers, as well as authority granted by specific legislation, to impose controls on transactions and freeze assets under U.S. jurisdiction.

which are acting within the United States, must register with FinCEN.   According to FinCen Representatives, new FinCEN 107 Form to register as a foreign MSB acting within the United States can be found online at the FinCEN website when a MSB tries to register. This form became available on or about March 14, 2012.   Nevertheless, beginning on January 24, 2012, any foreign money service business was required to register with FinCEN as a money service business through their agent bank, in this case VERWALTUNGS Bank.

29.   Pursuant to Title 18, United States Code, Sections 1960(a), 1960(b)(1)(A), 1960(b)(1)(B), it is a federal felony for a business to engage in transmitting money in interstate or foreign commerce (1) without a license in a state where the penalty for operating without a license is punishable by a misdemeanor or a felony; or (2) without being registered with the Secretary of the Treasury pursuant to the requirements of Title 31, United States Code, Section 5330.

30.   This investigation has revealed that VALOBENA facilitated the distribution of monetary wire transfers in interstate and foreign commerce on behalf of an Internet website that hosts online sports-related gambling activities.   VALOBENA remitted payments via wire transfers to gamblers throughout the United States, including to gamblers in the Western District of New York.  For the reasons set forth herein, these wire transfers are subject to seizure and forfeiture.

31.   The USSS conducted a search of the State of New York Banking Department,

Money Service Business Registration Web Site.   The State of New York Banking Department web site contains a list of entities that have registered as a Money Service Business pursuant to rules and regulations promulgated by the New York State Banking Department.  The USSS did not find any business named "VALOBENA AG" registered as a Money Service Business.

32.     The USSS also conducted a search of the Financial Crimes Enforcement Network, United States Department of the Treasury (FinCEN), Money Service Business Registration Web Site.  The FinCEN web site contains a list of entities that have registered as a MSB pursuant rules and regulations by FinCEN.  As of October 30, 2013, the USSS did not find any business named "VALOBENA AG" registered as a Money Service Business.

33.     Processing funds that represent money derived from illegal sports gambling in the manner set forth herein constitutes a violation of the money laundering provisions of Title 18, United States Code, Sections 1956(a)(1)(B)(i) ("concealment" money laundering); and 1956(a)(2) ("international" money laundering).

34.     Additionally, the "Wire Act", codified at Title 18, United States Code, Sections 1081-1084, prohibits, *inter alia*, certain sport-related gambling activities relevant here.  Title 18, United States Code, Section 1084(a) states:

> "Whoever being engaged in the business of betting or wagering knowingly
> uses a wire communication facility for the transmission in interstate or foreign
> commerce of bets or wagers or information assisting in the placing of bets or

wagers on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers, or for information assisting in the placing of bets or wagers, shall be fined under this title or imprisoned not more than two years, or both."

35.     The Wire Act defines "wire communication facility" as "any and all instrumentalities, personnel, and services (among other things, the receipt, forwarding, or delivery of communications) used or useful in the transmission of writings, signs, pictures, and sounds of all kinds by aid of wire, cable, or other like connection between the points of origin and reception of such transmission." Title 18, United States Code, Section 1081.

36.     VALOBENA facilitated the distribution of monetary wire transfers (wires) on behalf of internet website "***www.betonline.ag***", which hosts online gambling activity, all in violation of Title 18, United States Code, Section 1084.

37.     While Title 18, United States Code, Section 1084(b) allows the transmission of wire communications in interstate or foreign commerce for the purpose of placing bets or wagers, it does so only where the transmission occurs between two states or other foreign entities where such activity is legal. Online gaming is illegal in New York pursuant to New York State General Obligations Law § 5-401 - Illegal wagers, bets and stakes, which states:

"All wagers, bets or stakes, made to depend upon any race, or upon any gaming by lot or chance, or upon any lot, chance, casualty, or unknown or contingent event whatever, shall be unlawful."

38.     The USSS conferred with the New York Attorney General's Office regarding the application of the online gambling statute.  The New York State Attorney General's Office advised that this statute broadly bans gambling and makes violation of the statute a crime and that all of the of the prohibited activities that are addressed in General Obligations Law § 5-401 that are executed on-line are a violation.

39.     The Government is not aware of any state in the United States where online sports' gambling is legal.  Moreover, the Unlawful Internet Gambling Act of 2006 (Title VIII, Title 31 United State Code, Sections 5361-5367), is designed to cut off the flow of funds from United States gamblers to online gambling websites.  The Unlawful Internet Gambling Act does this by criminalizing the acceptance of financial instruments initiated in the United States by operators of online casinos, card rooms, and sports books *and* by prohibiting United States financial institutions from processing transfers of funds to them under regulations to be drawn up by regulators of financial institutions.

40.     On September 12, 2013, based upon the investigation and information the USSS obtained, United States Magistrate Jeremiah McCarthy issued Seizure Warrant 13-MC-51 directing all monetary wire transfers originating from VERWALTUNGS sent by or on behalf of VALOBENA, through JP MORGAN CHASE be held for a period of twenty-one (21) days for seizure and initiation of forfeiture proceedings.  The warrant was served upon JP MORGAN CHASE which began the active hold on all monetary wire transfers originating from VERWALTUNGS sent by or on behalf of VALOBENA, on September 13, 2013.

41.     As of October 3, 2013, a total of (159) wires totaling $818,604.26 that were sent through JP MORGAN CHASE on behalf of VALOBENA were seized by the Government.

## CONCLUSION

42.     Based on the foregoing, there is cause to believe, by a preponderance of the evidence, that wires from VERWALTUNGS sent by or on behalf of VALOBENA, through JP MORGAN CHASE, 1 Chase Plaza, New York, New York, 10005, represent proceeds from violations of: Title 18, United States Code, Section 1960(a) - Unlicensed Money Transmitting Business; Title 18, United States Code, Section 1084(a) - Transmission of Wagering Information; Title 18, United States Code, Section 1956(a)(1)(B)(I) - "Concealment" Money Laundering; and, Title 18, United States Code, Section 1956(A)(2) "International" Money Laundering.   Therefore, the wires from VERWALTUNGS sent by or on behalf of VALOBENA, through JP MORGAN CHASE BANK  are subject to forfeiture to the United States of America pursuant to Title 18, United States Code, Section 981(a)(1)(A) and (C).


WHEREFORE, the United States of America respectfully requests:


(1)     that an arrest warrant in rem be issued for the arrest of the defendant property;

(2)     that all persons or entities having any interest therein be cited to appear herein

and show cause why the forfeiture should not be decreed;

(3)     that a judgment be entered declaring the defendant property condemned and

forfeited to the United States of America for disposition in accordance with the law;

(4)     that the costs of this suit be paid to and recovered by the United States of

America; and

(5)     that the Court grant such other and further relief as deemed just and proper.

DATED:     Buffalo, New York, November 21, 2013.

WILLIAM J. HOCHUL, JR.
United States Attorney
Western District of New York

BY:     s/RICHARD D. KAUFMAN
Assistant United States Attorney
United States Attorney's Office
138 Delaware Avenue
Buffalo, New York 14202
716-843-5871
richard.kaufman@usdoj.gov

STATE OF NEW YORK   )
COUNTY OF ERIE        )  ss
CITY OF BUFFALO     )

**Daniel Batt**, being duly sworn, deposes and says:

I am a Special Agent with the United States Secret Service and I am the special agent assigned to the investigation of $818,604.26 United States currency, which represents all monetary wire transfers originating from VERWALTUNGS UND PRIVAT-BANK sent by or on behalf of VALOBENA AG, through JP MORGAN CHASE BANK, 1 Chase Plaza, New York, New York, 10005.  The facts alleged in the Verified Complaint For Forfeiture are true to the best of my knowledge and belief and were obtained by me during the course of the investigation of the defendant currency and from the official files from the United States Secret Service, and were provided to the officials of the United States Department of Justice, United States Attorney's Office.

s/DANIEL BATT
Special Agent
United States Secret Service

Subscribed and sworn to before me
This 21st Day of November, 2013.

s/JOURDAN L. STEVENSON
   Notary Public

**Jourdan L. Stevenson**
**No. 01ST6235106**
**Notary Public, State of New York**
**Qualified in Erie County**
**My Commission Expires:**
**January 31, 2015**